Chassman v. Shipley Go ahead, Mr. Shapiro May it please the court, Stanley Shapiro for the appellant Margie Chassman. We set out on this appeal to demonstrate that the district court erred in applying a one-year statute of limitations to plaintiff's claim alleging a breach of contract and seeking exclusively a contract remedy. So the six-year statute of limitations of CPLR 213.2 says an action upon a contractual obligation or liability expressed or implied is governed by a six-year statute. That certainly encompasses plaintiff's complaint and claim in this action. The CPLR 215.2 statute of limitations says one year applies to an action to recover any overcharge of interest or to enforce a penalty for such overcharge. So on its face, if you interpret actions recovering overcharge to include a charge of more than what was agreed in the contract, then that, too, could apply, and that's what the district court did. Tell me what the breach here was. The breach of contract in this case, there was a clause. It was called the usury clause. Clause 12. Clause 12. That provided that if any value, any payment taken or received in excess of the — that would otherwise be usurious. Here's what it says. It's the second sentence. It says, if at any time any interest contracted for, charged, or received under this note or otherwise in connection with this note would be usurious under applicable law, then regardless of the provisions of this note or any action or event with a parenthetical, which may occur with respect to the note, it is agreed that all sums or otherwise will be immediately credited, et cetera. Correct. Now, let's go back to paragraph 1 of the note. Paragraph 1 of the note specifically says that there will be a simple interest rate of 10%. Correct. Okay. Now, your claim is, is that because the value of the stock that your client delivered to Shipley was far greater than the actual indebtedness, that then somehow became an interest payment as opposed to just payment on the note, correct? Well, actually, Your Honor, there are two securities that are paid. No, I'm going to get to the option warrants in a minute, but let's stick with where I am right now. Part of your claim is that that was usurious. My claim is not that it was usurious, that it exceeded — that it was value of payment in excess of the usury rate so that it would otherwise be usurious. Well, wait a second. And I would — taking your question — okay, I'm sorry. Well, then let's talk about — let's talk about paragraph 4. Paragraph 4 says securities delivery in lieu of cash payment. That sounds like delivery of securities instead of a cash payment, right? Okay. You said it is understood and agreed that the proceeds advanced by the holder to or for the account of cashman are to be used to acquire shares of Class B, 10 percent cumulative convertible stock, blah, blah, blah, blah, blah. And that it is agreed that cashman may repay the principal of this note at whole or in part by delivering to the holder at any time before the maturity date the preferred shares. Okay. Now, bear with me. The note is a, what, 60-day note? 90 days. 90 days note. So on day one, let's do you and me. Okay. You want to borrow $600,000 to buy stock in Hemlock Corporation. Okay. And the stock at that point in time is worth around a dollar a share, so you want to buy 600,000 shares. Okay. And I say, okay, I'll give you a choice. You can either pay me in cash in 90 days or you can just give me the shares. And in 90 days, the shares are now worth $20 total. You deliver me the shares pursuant to the contract you paid me, haven't you? Haven't you? Yes or no? In Your Honor's hypothetical, I'll say yes. Yeah, absolutely. Well, that's exactly what this agreement is. Well, let me finish. This agreement says that in 90 days when the note is due, you either pay me the cash, 600 cash, 1,000 cash, or you pay me by giving me the shares. So apparently, Mr. Shipley was willing to accept the risk of the fact that the shares might be devalued and be less than $600,000, and he was going to get 10% of the interest. So that's a 90-day note. That's a quarter of a year. He was entitled to $15,000 in interest, right? Yes? Yes. Okay. Now, what happened here was? In terms of Mr. Shipley, I would say no. In Your Honor's hypothetical, Your Honor is not including the whole contract. Well, what part am I not including? You're not including paragraph 12. Okay, no, let's go back to paragraph 12. Paragraph 12 does not alter the terms of payment. It says that if for some reason the rate of interest that's contracted for in this contract exceeds a usury rate, then any amount paid in excess of the lawful usury rate shall be refunded. Correct. 10% is not usurious. It says not quite exactly that. Well, it does not say that payment of stock that is greater than the $600,000 somehow is to be attributed to interest. It does not say that. Can I address that, Your Honor? Because I understand that that analysis misses a couple of key points on this agreement. First of all, paragraph 12 contemplates, has to contemplate, that it is considering the payment of, that it's only in there because there is a payment of two different sets of securities that are of variable, of changing value over time. But it doesn't. And because otherwise. I'm sorry. It does not alter the terms of the payment. And one, in simple English, it does not. What it does do is it recognizes that the legislature may decide to alter the rate of interest. It says interest contracted for, charged, or received. It does not have language in here that says, and to the extent that value of the shares exceed the principal, they will be deemed interest on the principal due. It doesn't say that, does it? It says, it says, Your Honor, first of all, as a matter of contract instruction, there would be no need for paragraph 12 if interest was only the nominal 10 percent per annum. What principle of New York law, contract instructions, is that all under? That is, that we, you would not, that it would be in a completely meaningless, extraneous clause because 10 percent. It does not. I just gave you a meaning to it. I gave you a meaning. If the, if the, if the loan, if the interest rate changed by the State at some time after the loan was made, I don't think that the, the, the legislature can, can. Happened in 1932. That's where it would retroactively turn loans that were made before. Boilerplate. So, so that gets exactly to the point that it's deemed, it's looked at as boilerplate, and yet by its own terms it is the supreme clause of the contract. It says. Let me make it simple for you and I'll stop bothering you. You're not bothering me, Your Honor, but I would like a chance to answer the question because it is a good question. I'll be honest with you. I think you're right about the statute of limitations issue. I think the district court was wrong. And I think it relied upon a district court decision and it ignored clearly established New York law. This is a breach of contract case. This is not a usury case. In my view. In my view. But because it's not a usury case, you've got a problem. And so I want you to just tell me very quickly, read to me the language in paragraph 12 that says, that payment of stock that's valued in excess of the principal is to be deemed interest. Just give me the language. It has to be by, it doesn't say specifically payment of stock. It doesn't, it doesn't. But it references usury law if it would otherwise be usurious. Usury law says any, the usury law says payment of stock would constitute interest. And in fact, he takes a stock, the warrant, immediately upfront payment of a warrant, which the defendant himself, the lender himself concedes is worth over, at least over $139,000. Bad deals are not usurious. They're bad deals. But it would be usury, the usury law, if I may just take one more minute. The usury law by its language doesn't talk in terms of strictly payment. It says any value received, and it includes securities. This case law says it includes securities. And Your Honor is right. It's routine. It says interest contracted for or received. It doesn't say any value. It says interest contracted for or received. Can I just ask a question before you end? And it just, this is just a question. You know, the contract was, it's a 90-day contract. Eventually she defaults in, I think, November. Is that, I think that's correct. And there's a real question to me as to what happened to the shares at that point. Were the shares then transferred to Mr. Shipley at that stage? That's 90 days. Or, as she suggests, that she kept them and she kept getting dividends, and she didn't end up transferring title back to him to the shares until October of the following year. So October becomes the relevant date. Is that what happened? Or did she, in fact, practically speaking, give up her interest in November of the first year? That's exactly, Your Honor, you're exactly right, that she did not give it. But she continued to be the owner and she continued to receive valuable dividends, including dividends issued on September 30, 2009. It was only in October 2009 when the lender seized these shares because the shares had risen in value and had a deep market value of over $2 million, up to $3 million. And then up to that point, the lender did not consider himself the owner, was not receiving the money, and considered himself to have a right to sue for cash. Thank you. Thank you, Mr. Shapiro. Mr. Silverman. Thank you, Your Honor. May it please the Court. My name is Mark Silverman, DLA Piper. I represent the defendant appellee, Robert Shipley. Your Honors, this court should affirm the district court's dismissal in this matter because the claim is one for an overcharge of interest that is barred by the one-year statute of limitations, no matter where you run the time from. Give me a New York case. Don't give me a district court case. Give me a New York case that supports your view. Rubin, which is Rubin v. City National Bank and Trust of Gloversville. That's 131 AD 2D 150. The facts of that are a promissory note, just like here. And the plaintiff claimed that there was an excess interest payment. That excess interest payment was based on the UCC. They said that the plaintiff, the Lund ---- Overcharge permitted, not permitted by the UCC, right? Correct. And so it's really all on fours here. And it says, look at the plain language of the statute. It is, this plain language of the statute says an action to recover any overcharge of interest or to enforce a penalty for such overcharge. The term any, the term overcharge are clear. The term any was not limited by the statute. It was not limited by the legislature. The term overcharge means a monetary charge. This is from the court. This is, quote, a monetary charge in excess of the proper legal or agreed rate or amount. And, of course, that action stemmed out of a promissory note of an excess of a law. Same here. Chastman claims, paragraph 12, if at any time, and the key word is interest, Chastman wants to substitute that word with value, but the word is interest. Clearly interest. Yes. Well, there are oftentimes cases in which there are both violations of usury laws and or the contract themselves. But this is, the real gravamen of the claim, of this claim is, is that if the payment was made with stock that was greater in value, then that value had to somehow go, be attributed to something more than principal and, therefore, had to be deemed interest. And he relies on paragraph 12. Correct. And only then, after you get through that, do you then somehow call it usurious. Sure. And the paragraph itself then says, well, if it is usurious, then you have to refund it. It's clearly contractual language, not a rate of interest, but it just says you'll deem it usurious and you'll refund a portion of it. And my problem with that analysis is that's really a breach of the party's agreement as opposed to a manifestation of a charging of a rate that's prohibited by law. It's just the mechanics of how you carry it out. When there's an actual charging of a rate in excess of that, that might be what 215 is directed at. It's curious that there's no practice commentary whatsoever on 215-6. Yeah. There's just practice commentary on everything else. But in the New York cases seem to say that where you're having a fight, the New York State cases seem to say that where you're having a fight about how you interpret the contract, that's a contractual breach case as opposed to a usury case. And my concern is that I think the district court perhaps misapplied and relied on a single district court decision, which in my view is not correctly reasoned on New York law, and might spin cases off into one-year statutes of limitations where you're really talking about a breach of contract here. Well, I think the case you're talking about, Serratus, the southern district case, relies on Rubin. And that case expressly disagreed with Englishtown, which is the case plaintiff relies on. And Rubin was clear that it disagreed with Englishtown. And it said, The question remains whether CPLR 6 extends to actions other than usury. In this respect, unlike the Second Department, they found that the plain, ordinary meaning of the statutory language controlling. It doesn't say just usury actions. It says any action for an overcharge of interest. I think Rubin might be distinguishable for Englishtown. I'm not so certain that they're in direct conflict with each other because in Englishtown the rate of interest was non-usurious. Correct. And the question was whether they had charged a different rate itself, which was non-usurious. And so clearly that clearly is a contract matter and not a usury problem. But in any event, I presume you're wrong. I would not like to say. Do you still win? Yes, we still win. There's a six-year statute of limitations if we accept that. Even if the six-year period applies, the claim is still time barred. You just need, and the parties agree on accrual there. It is when a party possesses a legal right to demand payment. And the note tells us exactly when she had a legal right to demand payment. The note says at any time. So when she made the demand? It is when a party. I'm sorry, when he made the demand? No. Obviously the difference is between November. You're suggesting November when, in fact, there was a default. And if that's true, then the six-year statute of limitations would suggest that you win. Or if it's October of the following year when, in fact, there was theoretically a transfer of ownership interest in the shares, then it would fall within the six years. Well, I think that the six years begins to accrue at the time when the plaintiff had a legal right to demand payment. And the note tells us she had a right to demand payment at any time. Interest was contracted. She had to pay. She owed money. She was in default in November, right? Right. Okay. So it's kind of odd. Well, the breacher of the note is now claiming a breach by the defendant because he got the stock and hung on to it, right? Yeah. And the facts show that he got the stock in September 2008. That's when he got the warrants. There's a disagreement as to when. But she continued to have the benefit of it. Her claim is that to read the contract, she's entitled to a refund of some of her money, the value of the stock exceeding the value of her indebtedness, minus the interest, right? Right. There is no dispute. But if she's right about that, her claim accrues when he ultimately owns the stock, right? No, I think that ownership theory is a red herring. Ownership has nothing to do with it. Not only that, the September 2008 payment, the warrants, which plaintiff expressly claims materially increase the effective interest rate, there is no dispute. Those warrants were given on September 2008. That assignment is signed by her and she does not dispute that. The dispute is over. She says instead of giving the preferred shares in October 2008, which would make sense if she was giving them as collateral, she says she did not give them until a year later. But the evidence shows that she received the preferred shares in October 2008. Not only that, the legal right to demand payment would arise on September 2008 when she got the warrants, which is part of her claim. It would arise when the interest was contracted for, charged, or received. It was contracted for on August 21, 2008. It was charged no later than the date that they were due, when the note was due, November 2008. And it was received on two dates. One date, September 2008, that starts the running of the statute. Second date, October 2008, that starts the running of the statute. So on any date you start the running of the statute, this claim is time barred. And finally, should the court move past the statute of limitations, it can still affirm because there is no merit to this claim that there was an interest payment. The note is unambiguous. The court needs to look no further than unequivocal language of the note. It explains what the shares were. The preferred shares could be given. Chastman could repay the principal of this note in whole, but not in part, by delivering the preferred shares. Now, of course, there was a $600,000 loan. The preferred shares were agreed to rate of $600,000, and Shipley took the risk that that could have went down, and she could repay that, and that would equal $600,000. So there was no interest payment there. You know, I really, judges occasionally try to look underneath the cover to try and figure out what this really is all about. What is this really all about? Because it seems like an odd transaction to me. I think it was all about, you know, at the time, they wanted to buy the shares, and Ms. Chastman didn't have the money. Her husband was in a criminal case, and she needed money. So instead of going to the criminal, you know, there wasn't enough money, but they wanted to buy the shares. And so they did this transaction to get the shares at a time that they thought it was correct. And she could have kept those shares and made a lot of money. She could have paid him back with money she had, but instead, she gave him the shares back. I'm fairly confident that if on the day the note was due, the stock was worth $6 million, she would have found a way to come up with $600,000 in cash plus 15 in interest. Right. But she didn't. She surrendered the stock. She surrendered the stock to him. Because that was... The stock a year later became worth, what, $9 million? I think maybe two or three, and I'm just going... I thought the stock became worth $2 million plus in the following year, but at the time in November when she theoretically was in default, I assume it just stayed at $600,000. It was. And, of course, it was $600,000 because that's what the parties agreed to, because it could have went up or down. He took a risk. Yeah. Right. And that's why we don't need to look at what the real value is. It's $9 million now, and that's what the plaintiff is trying to do here under the covers, is trying to recoup what she did. She gave him the shares back instead of paying. And, you know, she just cannot come up with a theory recharacterizing all the plain terms of this note in order to recoup $9 million that she is not entitled to. Thank you. Thank you. Shapiro. Yes, Your Honors. Just quickly about Judge Wesley's point about the usury law. The language of the usury laws, it says, no person or corporation shall directly or indirectly charge, take, or receive any money, goods, or things in action as interest. So it defines very broadly what is received, and indirectly or directly. And the case laws, as well as that was I was reading from General Obligations Law 5501, 5513, that also talks that every person who, for any such loan or forbearance, shall pay or deliver any greater sum or value, and that it's unlawful. The issue of whether this was a violation of the usury or not was not an issue that was reached by the district court, and it was at very early stage. We've had no discovery, no testimony of what Mr. Shipley thought. So over a year later, if the stock was worth $5 million, why didn't you just go get $600,000 in cash and pay him and pay him the interest that was under the note? You're right, Your Honor. She was acting, she was in good faith working with this lender, and Your Honor asked what was this deal all about. It was not just, there were different. She had no interest in whatever was going on in her husband's life. No, no, I'm not talking about that. I'm talking about Mr. Shipley made this loan. He didn't just lend somebody $600,000. The plaintiff, Mrs. Chasman, came in and helped save this company from bankruptcy. That saved the lender, Mr. Shipley, millions and millions of dollars. He invested it. She saved it by borrowing $600,000 from Shipley to buy stock that she was supposed to either give back to him or pay the loan. That's not exactly accurate. She invested much more than that. Mr. Shipley didn't want to buy this outright. This arrangement was addressing different risks. She gave Mr. Shipley warrants that were worth hundreds of thousands of dollars right up front. In the past, she had actually contributed to this company to save the company from bankruptcy, and they had a personal relationship. And so as a result, that played a part. That played a part. Also, she had invested in this offering of preferred shares additionally. She owned 9,000, almost 10,000 of these preferred shares. Mr. Shipley had a great interest in this company succeeding in this raising. He was not willing to take the risk up front. The exchange of those shares, this agreement as it balances, we've never had a chance to explore those at deposition. It was a premature motion for summary judgment. The district judge only focused on the statute of limitations question, which he was mistaken about. He also was mistaken about the facts. He had a misunderstanding about the number of securities and what was involved, and I think that might have influenced his decision on the law as well. No, I didn't fully understand plaintiff's claim. You had no discovery at all? We had a limited initial discovery exchange. I served several additional interrogatory requests that were not responded to. They made the motion without responding to those additional. Now it's a 12B6 motion. It was a summary judgment motion, but before there was any depositions, it was within. We had an initial conference. The defendant raised at the initial conference that they wanted to make a motion for summary judgment. The judge below, Judge Crotty, said, okay, exchange your very preliminary initial discovery. I can't stop you from making the motion, and then he decided on statute of limitations grounds. I think there are many questions about what was at stake and how this balanced the interests. And if I might close with that. But it was a Rule 56 decision. It was. And if I might close. So all the facts have to be assumed in plaintiff's favor on this. And I think, Your Honor, when you go and look at what was this usurious, what was the intention of the parties, Your Honor is going in and actually considering things against us. Wait a second. If the contract's not ambiguous, New York law is clear. If the contract's unambiguous, we stick with the plain language of the agreement. And we don't need the parties, whatever their subjective intentions, are irrelevant. Is that true? That is true, Your Honor. But if I might close with one last point, which is about this contract revision, which is it seems to be somewhat standard for lenders to include this usury clause provision and act like it's not enforceable, it doesn't impose any duties or burdens on them, which is quite the opposite. By its very express language, it supersedes notwithstanding any other provision, notwithstanding paragraph 4, notwithstanding any other events, this is an obligation on the lender to make a refund. They've taken — what they do is they protect themselves against the remedies, the consequences, the forfeitures of the usury law. But by doing so, they undertake a contractual burden and obligation, and the court should not allow these lenders to just treat it as if it was, you know, as if it was just the pro forma and didn't have one. Thank you. Thank you very much, Your Honors. Thank you. We'll reserve decision.